Appellant. Mr. Axsom for the Appellant. Ms. Cope for the Appellate. May it please the Court, Counsel. Tony Axsom representing the Appellant Thomas Washington. I'd like to reserve three minutes for rebuttal. There was no substantial basis for deciding that the search warrant in this case established probable cause. In fact, the affidavit in  the search warrant was so lacking in indicia of probable cause that it was entirely unreasonable for a well-trained police officer to believe in its existence. And for that reason, a good-faith exception to the exclusionary rule of United States v. Leon does not apply here. What do you think is your best case for why there was no probable cause here? Leon v. Gates would be front and center, Your Honor. And I say that because Leon v. Gates lays out the totality of circumstances test that incorporates the two prongs. You're talking about Illinois v. Gates? I'm sorry. Illinois v. Gates. Okay. That lays out the totality of circumstances test that incorporates the two prongs of both veracity and basis of knowledge for determining the reliability of a confidential informant. If that's your best case, I'm having a little trouble seeing how this is worse than that. In that case, you had a completely anonymous letter, totally anonymous, saying that two people are drug dealers, and the only evidence that they're drug dealers is that the person says they're drug dealers and says that they're going to travel to Florida and then they're going to drive back. And the only confirmation the government has is a DAA surveillance car that goes to the airport, and sure enough, these people do fly to Florida and drive back. And that's it. That's all the evidence. And yet the court finds this is before Leon, so there's no good faith exception yet. And yet the court finds sufficient probable cause in that. Isn't this a better case than that? This is not a better case than that. As the court points out, there is corroboration, and it's corroboration of predictive facts that suggest criminal activity. Can you sort of take us sequentially through what the CI reports he or she saw, coupled with what the record check showed? The CI reports, much of what the CI reports is based on what is reported to the CI. Just what the CI sees. The CI sees you, I, go to a location, enter a car. Slow down. It's a particular location, 3025 Yazd Place, right? We know something about 3025 Yazd Place, right? The record check tells us that a Thomas Washington gave that address as his residence, when he was arrested for unlawful possession of alcohol, right? That's correct. And we also know that there's a Thomas Washington, I think of the same address, maybe it's 3001 Yazd Place, who has two felony drug addictions, right? So we have some clues about what's happening at 3025 Yazd Place, right? I don't think either of those facts gives a clue about what is happening at 3025 Yazd Place. We know only that someone lives there. That is an innocuous... But the person who lives there, he comes out of the house, right? And he goes into the car with specific license plates. And the license plates can be traced in the name of Thomas Washington, the person with the two, at least a person with the same name, with the two felony drug convictions, right? I can't agree with that. First, I have to correct that while the affidavit reflects that there are two felony drug convictions, there are not actually two felony drug convictions. Apparently there's only one, right? But you have a felony drug conviction that is 16 years old, and you have the address and the registration of a car, two factors that are utterly innocuous and available in the public domain. Well, the drug conviction is not innocuous. That would be the third factor. But the address and the registration of the car are factors available in the public domain. And the person comes out of the house and gets into this car with the UI, right? That's correct. Now... That is what the CI knows. Since the car is registered to the person apparently with the drug convictions, it seems likely that the person getting into it is indeed the owner of it, right? Because you normally can't, at least in a place like Washington, D.C., just walk into any old car on the street. I think that that's a great stretch of inferences. There are... I've had clients who have 17 people live in the house, and I would bet that all 17 can walk out and get into the car in front of the house. It isn't the car? If it's owned by the nature of... Isn't the car registered to a particular person? These 17 people share one car or what? Well, that's a separate inference. That's a separate question as to whether they share the car or whether they have access to it. They all have access to the car. This person clearly had access, right? We do know that the person got into the car, yes. Right. We don't know. There's no suggestion that... I mean, that's the practice of people locking their cars in Washington. I can imagine places in this country where they wouldn't lock it and anyone can walk in any car. But Washington doesn't seem to be such a place. Well, there's no allegation that this car was locked, Your Honor. That's true. That's true. We just have to go on probabilities. It's parked on a public street. I would say that it's less of a probability and more of an inference that this car was somehow secured or that it belonged. Are you saying you don't... I mean, I would say it's more probable than not, certainly not beyond reasonable doubt or anything, but more probable than not that if a person comes out of a house and enters a car and sits in it, that it's that person's car. Now, it could be a friend's car. It could be somebody else's car. But for probable cause, you don't need any of that. Wouldn't you agree that it is least probable that it's his car? I'm happy to agree that it's probable. Okay, well, I think that's all Judge Williams is asking. I don't think that it establishes anything. It does not establish anything related to criminal activity. People are allowed to walk out of their house and get into a car with a friend. They are. But I think Judge Williams has more along the line of the conversation. If at that stage we know that we have someone, we probably have someone with a felony drug conviction, going out of his house and getting into presumably, probably, his car. We can call it his car. And he does something there with someone who was apparently on the sidewalk and came into the car with him. And then the two of them get out. Doesn't it seem likely that something suspicious was going on there? I mean, why do people who meet, I mean, the person has his house. They want to do something in the house. They can go into the house. They want to do something on the sidewalk. They can do it on the sidewalk. They go into a car. That's odd. Doesn't that sort of raise questions? What's going on in the car? In D.C. it doesn't strike me as odd. But even if it is odd, it doesn't establish anything that anything criminal has occurred. Well, it doesn't prove it. There's no doubt about that. We're talking about accumulating inferences. And then, of course, the final thing is the UI produces the cocaine, which, of course, he could have had on him from the beginning. But we still are sort of slightly changing the odds, which don't even have to get up to more probable than not. I understand that it creates some suspicion. But the suspicion arises, I think, only from the person's prior drug conviction. Why doesn't the suspicion arise from the fact that the C.I. Well, start out with the C.I., whose credibility you don't challenge, according to your brief, right? The C.I. No, we don't challenge the C.I.'s credibility. He says he was told by his friend he was going to do a drug deal at this house. Now, we don't know whether the friend was telling the truth, but we do know that the C.I.'s report of what the friend told him was accurate, because you're not challenging that, right? That's correct. So his statement that this is what I was told is accurate. He goes to the place, he sees something that could be consistent with a drug deal and could not be. Namely, somebody comes out of the house, his friend, and that somebody go into a car. The friend then leaves the car, goes to him, and shows him crack, right? And the C.I. knows what crack is, and you're not challenging the fact that the C.I. knows what crack looks like. That's correct. All right, so I guess one possibility is this is all a terrific charade to fool the C.I. It's possible, but it seems at least equally possible that this is actually a drug deal that he's watched. And why would anybody go through this elaborate charade of persuading a friend that he has conducted a drug deal? Why should we assume that that's what really happened here, rather than what really happened here is he saw a drug deal? I think that the government has to establish that there's probable cause to search inside the house. Well, we'll have to do one thing at a time. I appreciate that. But we'll start out with the drug deal. So it seems to me that there is at least probable cause that there was a drug deal. You have an honest description of facts that are suspicious and that end up with crack in the hands of the person who we know is honest. Yes. That seems like there's a drug deal, or at least probable cause for a drug deal. So now the only remaining question is whether there's probable cause to search the house. The drug deal goes down directly in front of the house. Police officers come and they see the house. The car is still parked directly in front of the house. The person who we expect did the drug deal came out of the house. And we have the affidavit of the officer saying, I've learned that when selling drugs out of doors, narcotics traffickers rarely keep it on their person or immediately about them, the entire supply of drugs. They commonly retain much or most of their drug supply in their home. Well, I don't see why that's not probable cause to believe that the home in front of which the drug deal occurred and which belongs to the person, Tom, who both owns the car and did the drug deal, still has some drugs in it. Why not? I have to take issue to take one thing at a time. Fair enough. This is not evidence of a drug deal. I cannot stress that enough. You have the U.I. get out of the car. The only way that you get to that this is a drug deal is if you believe the words of the U.I. You can't get to a drug deal by seeing two people get into a car and one person get out and show crack. That is essentially all we are left with. That would not be enough, certainly, to convict somebody. But the question is, what's the counter hypothesis here? Why did the friend go through this elaborate charade to show the C.I., to actually show him crack, which he says he got in the car? Doesn't it seem probable? Not more likely than not, not beyond a reasonable doubt, just probable or just an equally likely scenario that the drugs came out of the car. No, because we don't know a single thing about the U.I. We don't know if he is an enemy of someone who lives in the house and has actually set up an elaborate charade. The veracity of an anonymous informant is unknown and unknowable. Without having some basis of knowledge or concept of the veracity of the person reporting these things, we have to assume that he is not telling the truth. Because everything is unreliable. I understand that. That's why I want to circle back to Gates. So, again, in Gates, we have a completely anonymous and completely unreliable tip. These guys are dealing drugs. The only thing they say is something that is not illegal at all. They're traveling to Florida by plane, and they're going to drive back. That's all there is. And that is all that the police are able to confirm. Now, here, we have quite a bit more. No one sees drugs in Illinois versus Gates. In fact, the Supreme Court, the principal reason the Supreme Court says this is really credible is, quote, Florida is well known as a source of narcotics. Well, I suppose Washington, D.C. is well known as a location which drugs are dealt. If the Supreme Court is willing to indict the entire state of Florida in that case with one sentence and to rely on it, I really don't see how this is any different. They say, the court also says, this idea of somebody driving down there and then driving back, they say, is as suggestive of a prearranged drug run as it is of an ordinary vacation trip. Well, we have something just like that here. We have somebody getting out of the car, out of the house, meeting in a car for just a few minutes, and then going back in the car and somebody going, now, that is certainly as suggestive of a drug deal as it is two friends deciding to meet in a car for two minutes. I respectfully disagree that all you have in Gates is a couple leaving Illinois and driving to Florida and driving back. What else do you have? I believe the anonymous letter said that the couple sells drugs. It gave their address. It said they buy drugs in Florida. The wife drives down. The husband flies back. But the anonymous, those are people who we have no reason to believe are telling the truth. In this case, we also have the UI saying the same thing. The drugs are being dealt out of this house. I'm going to a drug deal. Watch me do the drug deal. Why isn't that the same? You say you don't believe the UI here. Why did the Supreme Court believe the completely, completely anonymous tip in Gates? Because police officers corroborated predictive details of the tip. And that's why I say it's not as simple as a husband and wife driving to Florida and driving back to Illinois. There were details as to when the husband would go, when the wife would go. The last part of the tip was that there was $100,000 worth of drugs in the basement of the house to be searched. So it's also not correct that the tip did not say anything about drugs. Which tip did not? The tip in Gates. I think the tip did say something about drugs in Gates. But it's from somebody no more reliable. So in Gates, the completely anonymous tip says, go to Florida and you'll see them arriving and leaving. And the police do that. And here, the completely anonymous tip, the UI says, there's drug dealing in the house and there's going to be a drug deal. Come with me and watch me do it. And in fact, the CI, whose credibility you have accepted and therefore is as accepted as the DEA surveillance team in the other case, goes along and sees just what the friend, the UI, says is going to happen. Somebody comes out of a house, goes into a car, the UI comes out and he's got drugs. Now, yes, we don't know what happened in the car. But we know as much about the car as the DEA knew in Gates. I don't understand what the difference is. And keep in mind, Gates is not even a Leon case. Gates is just probable cause. It says as good enough as it is without the good faith because they haven't yet established the good faith. Because there's nothing predictive about the tip that the CI is following to go to that house. There's absolutely nothing predictive. There is, the CI doesn't say a man named Tom is going to walk out the house and walk down to the car and get into the car. Those are the details that- No, but now you're putting, just to be clear, you're putting this on the CI. But we believe the CI. What has to be predictable is what the UI says. Right? Isn't that right? Did I misspeak? No, no, I certainly didn't mean- I mean the UI. Okay. The UI has not provided any predictive tip. He has said, I'm going to go buy drugs. That is not predictive. He is solely within, that information can be manipulated by him and is controlled by him. Let me ask you this question- He's not saying go witness this- Let me ask you this question to follow up on Chief Judge Garland's question. Let's suppose to just kind of eliminate the confusion related to UIs and CIs both in the same case. Let's just suppose that a citizen comes up to the detective and says, I'm going to show you how easy it is to buy drugs here. I'm going to go up to this guy's house and buy drugs. And everything happens the way that it happens here. He knocks on the door, he goes in the house, comes out, gets in the car, gets out of the car, walks down to the detective and shows him what the detective believes to be crack. In the meantime, the detective had run a records check on the car license plate and found out everything that he found out. Would the detective at that point have probable cause to go arrest Washington? If the detective is right there in that area? Yeah. I don't see why not. Yes, the detective would have probable cause to go arrest Washington. Even though he didn't search the citizen beforehand and therefore doesn't know whether the citizen brought the drugs in himself. It wasn't a controlled buy, it was just a buy. We refer to this person as a citizen. I'm assuming by citizen, honest, law-abiding citizen is what the court means. If it's not that type of citizen, which the Supreme Court has suggested should be believed by the police, not the anonymous tipster. So you're saying that makes that hypothetical different than the UI in this case? It does make it different, yes. And I'd say a second difference is that the police are right there and can verify immediately facts that are related. Which facts are they? I would assume there would have to be a description that the person would have to be pointed out to the police right then and there. Since, again, we trust the CI to be telling the truth, what's the difference if the CI observes it or the police observe it? Observes, I'm sorry? Basically the scenario is the same, except in one the police are observing the alleged buy and in the other the CI is observing the alleged buy. Why should it make any difference? Well, first the CI is not a police officer. But you, the affidavit says he's told the truth on 100 prior occasions and therefore is credible. And you told me and your brief tells me that you're not challenging his credibility. So I don't see why we wouldn't trust his description of what happened for purposes of probable cause any more than we'd trust the police officers. I guess I'm still having a problem with what his description, what is his description of what happened? If his description of what happened is a man came out of a house, got into a car, and the UI got back out of the car after being in there for several minutes and showed me crack in unknown quantity. We don't know if this is a chip or crack. We don't know if this is a big block. We don't know. We know that I recognize it as crack. But if the UI has every ill motive, if the UI is a rival drug dealer and wants to set this person up, those are the speculative hypotheses. Right. They are speculative hypotheses. You're separating it all out from what the records check showed. The records check. Without the records check, I'd probably agree with you. But the records check does not suggest anything about what is in the house. The records check doesn't, it isn't a factor that raises this to the level of probable cause. Tell us something about the identity of the owner of the car that they get in here. And also about the residence of the same person. In D.C., you might have a large percentage of the population with a prior conviction. If that's all we need, the allegation of a transaction and someone with a prior conviction to search their house, then I guess for the residents of D.C., the warrant requirement is different for the residents of Illinois or Florida. You're only talking about the people with a drug conviction in D.C., but let's put that aside. You're saying that that's immaterial in D.C., but that seems to me a stretch. But this person is also seen coming out of the house and getting into this car, and then a couple of minutes pass and then he gets out. I don't know, is that totally that behavior which completely explains itself innocently? The defendant doesn't have to explain his behavior. No, no, we're talking about probabilities. We're talking about probabilities, and Judge Garland has several times reminded us it doesn't have to be more probable than not. So we're talking about chipping away at the probability that everything is completely innocent. Well, I'm not prepared to say that everything is completely innocent, but I'm 100 percent prepared to say that that is not a probable cause that a crime occurred inside of that car. And ultimately, the warrant speaks for itself, but there is no way to get to the probability of a crime occurring inside of that car, even with a prior criminal conviction, 16 years old. I'd suggest to the court that if in 16 years we don't have criminal activity, it cuts just as equally in the opposite direction, that this person is not currently engaged in ongoing drug trafficking. But, and otherwise innocuous details and no other corroboration by police that there is criminal activity inside these premises. I understand that the court is relying on the officers, the inference that the officer would draw if this was indeed a drug transaction, that drug dealers have proceeds from their crime or evidence of their crime inside their house. But there, we don't have identification of the person who got into the car being Thomas Washington, who lives inside the house. We don't know who the person is who got inside the car. So to draw an inference that that person necessarily lived at the house and got into the car, I guess, is another stretch. It may be more suspicious and suggest more, but. But when you're asking about predictive information, so the UI says the guy's name is Tom. The police then check and find out that Tom Washington owns the car and that Tom Washington has given that address as his. That doesn't make it at least probable that the person who walked out of the out of a residence that Tom Washington has said is his residence into a car that is registered to Tom Washington, who has been described as Tom, is the defendant. I'm not saying, again, I'm not more likely than not, not beyond reasonable doubt, just probable. No, I'm not prepared to accept that because we don't know who else lives in the house. We don't know if there's Thomas Washington, Sr., Thomas Washington, Jr. or Thomas Washington. I'm going to use the Supreme Court's language again from Gates. Isn't it as suggestive that it's Thomas Washington, at least as suggestive as it is somebody else who lives in the house? If you believe, if you believe, UI, that the person that came out the house is Tom, and we have no reason to believe that the person he's identifying is Tom, we have no reason to believe that. Even if you leave his Tom out of it, isn't it probable that a person who leaves a house that he has said is his and enters a car that is registered to him is that person? It's not even probable? I'm sorry that I am at a loss to, it is impossible for me to say that a person who gets into a car in front of a house, that it is probable that that person owns the car. I'm sorry. Okay, that's fair. I cannot get there. We don't know how many people live in the house. We don't know how many people have, as I said, I have clients. But doesn't this case really hinge on the credibility of the UI statement, not just that, you know, let's assume you're not going to be able to win the argument about whether this is Tom's house or car. Doesn't really the existence or not of probable cause hinge on whether the magistrate ultimately should give credence to the UI statement about what happened in the car? Because that's what ties Tom to criminal activity, not just that it's his car, that it's his house, but that some drug transaction happened in the car. Is that really what everything turns on? I'd say that that is a substantial factor that demonstrates the insufficiency of probable cause in this case. And that's why I cite Illinois v. Gates, because moving away from the anonymous aspects of the tip in that case, the analysis is that a tip has to, under the totality of circumstances, you have the two factors. You have veracity and basis of knowledge. And because there is no reason to believe UI that the deal went good, and we have no basis of knowledge for understanding how, why the UI says that, you cannot credit that. So, yes, the probable cause falls away because we can't accept that statement as true. Well, there's some additional reason to believe that the UI has some basis of knowledge, because he says that the guy's name is Tom, and that would appear to check out by the cops. I think that's Chief Judge Garland's point, because they can connect the house to a Tom and the car to a Tom. So there's at least some corroboration of basis of knowledge, but your point is there was no corroboration of anything predictive. Is that your point? Anything criminal. I'd say predictive, but, yes, criminal, yes. But the second part of Gates, which we keep overlooking, is that law enforcement corroborated facts. They corroborated facts that were predictive that suggested criminal activity. What suggested criminal activity? A person flies to Florida and drives home. That's it. Nothing else. That's really criminal? Well, I mean, to be frank, I know a lot of people who fly to Florida and drive home. So in the same way that you know people who have 16 people living in a house and all use the same car, lots of people fly in one direction and drive in the other direction. Why should that have been enough? Because of the manner in which they did it, husband and wife splitting up, one going, one coming. I have to say that in my experience that happens a lot. I mean, busy, busy members of a couple, they travel separately. A lot of people travel separately in order in case one of the planes goes down, there will be someone to take care of the kids. That's correct. But it is unusual for a husband and wife to fly separately, to get to a location, to stay a matter of hours at a motel, get in a car, and drive back up. I think that that is suggestive, and I think most police officers would believe that that is unusual. If you were defending somebody in those circumstances from a search of the car, you would not be making this argument, would you? You don't think this is enough for a reasonable cause to search a car, do you? Reasonable suspicion to search a car? Yeah. It might be enough for reasonable suspicion, but it's certainly not enough for probable cause to search a house. So we're taking a separate leap. Yes, but here we have a warrant, so we're not bothering you about the question of probable cause here. We're bothering you about the good faith exception. That's all we're really asking you about, not whether there's probable cause, but whether no reasonable magistrate could have thought there was probable cause. I think, though, we've probably exhausted this unless the other judges have questions. Thanks. We'll give you another chance, even though we took your way over. We'll give you another chance on rebuttal. Good morning, Your Honor. May it please the Court. My name is Chris Ellen Cole. I represent the United States in this matter. Your Honor, we wish to thank the Court for its indulgence in rescheduling the argument. You're very welcome, but you should also thank Mr. Axsom because without his consent, we wouldn't have consented. Yes, and I appreciate that. Your Honor, I will address primarily the issues that were raised this morning as well, unless the Court has particular questions on other matters. But it's the government's position in this case that the warrant here did establish a fair probability that evidence of drug dealing would be found at 3025 Yost Place. And the magistrate judge, Judge Weisberg in this case, had a substantial basis to conclude, based on the affirmance in the affidavit, that there was such probable cause. And even if this Court, after giving the deference to the magistrate that we think is warranted, doesn't agree with the magistrate or the superior court judge's view in this case, we do believe respectfully that Leon does not warrant under that doctrine. Suppression of the evidence is not warranted because the officers had an objectively reasonable basis to rely on that properly issued warrant. Let's start with the probable cause issue. And the last paragraph of the majority opinion in Illinois v. Gates discusses the anonymous letter. And it says that, A, it was predictive. It predicted future activities. But, B, it was knowledge that only someone would have that would really know this couple. I mean, how else would they know what this couple was going to do unless they were either friends with the couple or had some sort of source for intimate details about this couple's travel plans. Here, the information that was corroborated was information that was not intimate by any stretch. It was whose car is this and who lives at this address. Why doesn't that make this apples and oranges from Gates? Well, Your Honor, we agree that the information is not as intimate, if you will, although I don't know if you would call flight reservations and travel plans intimate either necessarily. You might be able to search the Internet and find out where I live. I don't know if they had the Internet at the time of Gates, but if you knew Gates. My point is that you could find out today probably where most people live. Sure. And if you go to their house and see a car parked in front of their house. No question. Whose car it was, but you couldn't tell, okay, are they going to fly to Florida next week and drive back? That's true. But I think the thing that's intimate, to the extent that we use that word here, is that this particular unwitting informant knew that Tom lived there and that Tom would be willing to sell drugs, would in fact go through with this transaction that the UI was attending. Let me just leave the drugs part out. This unwitting informant says to our honest person, come with me, and then suddenly a man leaves a house, gets into a car with the anonymous informant. So the anonymous informant must have known enough about the facts of the man's life to know that he was going to walk out of the house and get into a car with him. It's not like they cruised up and down the street looking for somebody to walk out of a house. That's true. So he knew the exact moment, didn't he, that the person would leave the house. And isn't that equivalent to knowing that in Gates that they were going to land at a Florida airport at a particular time? Yes, I think there is some analogy there, although I will acknowledge the affidavit doesn't say that they made some prearrangement or how they actually, the UI and Tom, contacted each other. But I think it's unusual. Does the affidavit say anything about the UI telling the CI that it's going to happen in the car? No, it does not say that either. So what is predictive in the affidavit? I think what's predictive is that they happen to meet and do what the UI intends to do, which is to purchase drugs, and that it's not just any person. It's a person that- You're going a little too fast on that. They meet and they do something which is certainly consistent with a drug transaction, and the probability that it's being something other than a drug transaction is, to put various numbers on it, certainly far, far less than 100%. That's true. But I think, again, we have no direct observation of what occurred inside the car, but we have, I think, a very strong web of circumstantial information that does corroborate what the UI told the CI was going to occur. And I think that's significant, Judge Wilkins. I think here you have the UI say to the CI, I know where to get drugs. Let's go see Tom at Yost Place. Come with me. They go there. Lo and behold, a person named Tom at that address on Yost Place comes out. They have a quick meeting, very quick, and then the UI exits the car, goes and immediately meets the CI, and displays a white rock substance that the CI recognizes to be crack cocaine. I mean, I think here you have a very strong prediction, if you will, by the UI, that this person at this premises will be able to supply me with drugs. That's what I want. Come and watch me buy those drugs. And that is exactly, we submit, what happened. And so, yes, I mean, it is something that is predictive in the sense that what the UI intended and predicted would happen, happened. And that, we submit, is analogous to Gates. I agree it's not on all fours and all the particulars, but the type of corroboration that we have here, we would submit, is as strong or stronger than occurred in Gates. Because here you have the police officers who, based upon obtaining the information from the CI, the police officers did, in fact, corroborate that someone named Tom lived at that premises and that the vehicle with a particular license plate, the Cadillac, did, in fact, register to someone named Thomas Washington at that Yost Place address. And so that, we submit, is the type of corroboration of, granted, innocent details, but it was corroboration by law enforcement that what the UI had said was, in fact, accurate. And I would analogize to this Court's case in laws, which was the case where there was a report that people were selling drugs out of a Holiday Inn. And there were two individuals, and the police corroborated that report by checking the records of the Holiday Inn and, in fact, confirming that these two particular individuals were staying at the hotel at that relevant time. And that's not, standing alone, a piece of criminal detail, but it is corroborating the predictive detail that, in laws, was provided by the source of information in that case. And I think that's very similar here to the type of corroboration of predictive detail that occurred in this case, Your Honor. Let's take the corroboration out of it for a second, or at least predictive part out of it for a second. If police observe some people talking and somebody, one of the people, one of the two people has a prior drug conviction, they know that. And then the person, they stop talking and the person walks towards them. And they terry-stop that person, and let's say, plain feel, they find crack. Do they have probable cause to arrest the person that this person that they stopped was just talking with? I think that's a harder case, and I guess I would focus more, and the reason I think it's harder is the basis for the terry-stop. Aren't there lots of cases that say no? Yeah, well, it would be a question of the validity of the terry-stop, and if the prior conviction, standing alone. I'm not talking about the validity of the terry-stop. I'm talking about after they terry-stop one individual who was half the party to the conversation, and they terry-stop him and find crack on him. Aren't there lots of cases that would say they don't have probable cause to go arrest that other person? Oh, the second person. Yeah, the second person. I'm sorry. I'm sorry, Judge. I misunderstood. They didn't witness an exchange. They just saw them talking. I think without more information, I think that could be a more difficult case. What if the person says, and I just bought these drugs from that other person? Well, then I think they would stop that person, and that happens quite frequently. And they would have probable cause to arrest that other person? I think they have a terry basis to further investigate, and then from there, if they found some additional information that corroborated drug dealing, then they could proceed to probable cause. But I think that would be a closer terry situation, even for the second person. Hasn't the Supreme Court said that there's a material difference, as far as reliability goes, of statements against penal interest that are truly self-inculpatory as opposed to inculpating someone else? Absolutely, that's true. It's always more reliable if you're inculpating yourself. But I think in a case like this. So there's no presumption of reliability of, oh, yeah, these are my drugs, and B, I bought them from this guy over there. There's no presumption of reliability to the B part of that statement, right? No, I don't know if I would say that, because in the course of saying I have these drugs and I bought them from this person, you are implicating yourself. And so that gives some indicia of reliability. It's not as completely reliable if I only admitted my own wrongdoing. But I agree with you that there are cases where they splice those types of statements. But, I mean, I know the government has taken the position in some of those cases that if the bulk of the statement is still deemed to be against your penal interest because you're now a co-defendant in that case, that that statement, we would argue, would come in under, for example, that hearsay exception. And that would be, you know, there are cases all over the map on that point. But I think in our case, Judge, I think one thing that's important is, and this is where I think the government and the appellant here disagree. We don't think that this case completely hinges on hearsay from the UI. We have direct observations that were made by a reliable, confidential informant. And those direct observations map out, we think, what he saw, what the CI saw, and what the CI heard the UI intend to do that were corroborative of that. And I guess the case that I think is also very helpful to the government in making this analysis is a case that Gates cites approvingly, which is Jones, a Supreme Court case in Jones. Jones was a very basic case where a confidential informant said, I bought drugs from these two people. And the affidavit also said, and we know, we the police know, that these particular people are drug users. And the Supreme Court said that that, together, was enough. And that there was no control by, there was no surveillance or anything else. Those two facts were enough for probable cause. But they had current information. It was more current in Jones, I agree. The presumption was that it was current. It was these are people who currently use drugs. That's true. And that's exactly the case that we submit here. That's what the. . . Because he had a 16-year-old drug conviction? No, Your Honor, because just within the past 72 hours, the confidential informant observed a drug sale that occurred between Tom and the UI. And we submit that's sufficiently current in the totality of circumstances. Jones, I think it was one day. So Jones is more concurrent, more current, I agree. But in this case, we think that within the 70, a fair reading of the affidavit is within the 72 hours. No, the Jones, the police had their own independent corroboration. Which was never specified in the warrant. They just. . . Yeah, but they said that they had it. Sure. And here we have that. The CI doesn't say, I know that Tom is a drug dealer. There is a statement to that effect. Because of other information that I have about Tom, the only information that the CI conveys that he has about Tom is what he got from the UI. So he doesn't say he corroborated anything or he had any independent knowledge. He said drugs were being sold there. But you're right. He doesn't say based on what. That he was concluded that because he believed that from watching this one incident that he thought was a transaction. That's a possible. That drugs were being sold out of the house. That's a possible inference. But again. Why should we assume that he had other information when he doesn't say he had other information? Well, Judge, I'm just saying that that statement standing alone is pretty broad. That's the only point I'm trying to make. But you're right. He does not point to additional. You know, in the Fourth Amendment, we can just assume that if somebody says, well, drugs are being sold there, that they're talking about that they have some other information that isn't specified. No, that's not what I'm saying at all. But I think that here what we have is a general statement. We have specific information. And we have this happening within a fairly short span of time. And we submit that that is enough for a reasonable police officer to have objectively reasonable reliance on that warrant as establishing probable cause. And that the magistrate had a sufficient basis upon which to issue the warrant based on that information. And that, we submit, is really all that's required here. And that, you know, we could splice this information and wish that the affidavit had been written with more detail and more specificity. But we think that here there is a fair amount of corroboration. And we also think that there is a reliable, concededly reliable, confidential informant who observed this in plain view. And we submit that combination of circumstances is enough to warrant affirmance of the district court's decision to deny the motion to suppress in this case, Your Honor. And if the court has no further questions, we thank the court and submit with respect to the remaining issues on our briefs. Thank you. Okay. Mr. Axon, I want you to take another two minutes. I would take issue with the government's portrayal of the evidence that the affidavit reflects that the drug transaction took place within the last 72 hours. It is not a fair reading of the affidavit. The affidavit says what it says. It says clearly that the police officer spoke with the confidential informant within the last 72 hours. I think it's telling that officers begin all of their police reports and all of their testimony with time, date, and location. And there is no time, date, or location of this alleged transaction, even if you take everything that the UI says is true. No reasonable police officer, no well-trained police officer would believe that there was probable cause in this search warrant because we don't know the time. And it's also conspicuous that the time is left out. Either the officer knows the time and doesn't want to say because it is far off or intentionally leaves it off for some other reason. But even if the police officer ---- We're getting into a time question that we didn't start out with, so now I have to ask you. I don't see this argument made to the court below. There is a reference to freshness in that case, but that argument is not about the time of seeing the event. That argument is there's no fresh evidence to indicate someone named Tom lived there, the only representation being that this was the address he gave 11 years before. That's not the same question as whether or not the deal went down within 72 hours. I believe that ---- I thought that counsel below argued that the information was stale. He did, but only on page 24 of the joint appendix. The only argument he made about the staleness is the argument that they only knew the address from what the guy said 11 years ago. They didn't make this argument that the stating of the 72 hours wasn't the time at which it actually occurred. That's all I'm asking. Well, whether he made it or not, I think it should still be a factor as to whether the officer in this case reasonably relied on this warrant. What do you say about the Gaston case that the government provided? The Gaston case involved a confidential informant who the affiant reported within 72 hours had told him that there was a gun inside of a location, inside of a house, which I will concede at least raises an inference that the confidential informant is providing the information that is recent. Here, the difference is you have taking ---- let's take everything that UI says is true and assume that there's a drug transaction in a car. You have the CI reporting activity, a transaction, not drugs inside of the house. And I think that that's a big difference because, as we know, timing is important for search warrants. You have to take a second step in order to infer that evidence of drug transaction will be in the house. And that second step is the knowledge and experience of the police officer. The knowledge of the experience of the police officer is that drug dealers keep proceeds of their crime in their house. So you have to determine that the person who got into the car is a drug dealer and not a one-time drug transaction. All we know, even if you take everything UI said, is the deal went good. We don't know whether the deal was Tom and I bought drugs together and he's going to give me my share now. We don't know if the deal is I gave him his share. We don't know. It is, it is accompanied by the CI saying that it had personal knowledge that illegal drugs were being possessed, stashed and sold from these premises. So that suggests certainly an ongoing process. Your Honor, we didn't touch on this, but I make this argument in my brief. And I think, again, that's why Leon B. Gates is helpful to me. That statement at the start that the confidential informant has knowledge that drugs are possessed, stashed and stored is a conclusory statement. It does not lay out for the issuing judge the facts upon which that CI is reliable. Standing alone, I agree, it's nothing. I think it points to an answer to the time question. I respectfully disagree because it is simply a conclusory statement, even within the context of the affidavit itself. The affidavit makes that statement and then the next paragraph says the CI then provided me the more complete information. And in that more complete information, the facts are laid out for why the CI is drawing that conclusion at the top. The Supreme Court has said conclusions of that nature, that drugs are in a certain location, are inadequate for probable cause, that's Illinois v. I'm sorry, I keep confusing Gates and Leon, but Illinois v. Gates, that's Nathanson v. United States and Aguilar v. Texas, where those bare assertions of probable cause are inadequate. So I would submit that that statement means nothing. The court can take nothing from that to determine timing in this case. No reasonable police officer would believe reading this. It may be that Officer Katz knew something about the time, but it is absolutely an assumption to believe that time is reflected in this. Well, but that is what we said in the case that when the officers say I met with the CI within 72 hours, I have to say I wasn't aware of this case myself until the 28-J letter came, but we said that when it says, this Gaston, when it says that the tip came within 72 hours, it's a fair inference that the event occurred within that time. I'm not sure that's what Gaston says. Gaston also makes the point that a gun is a permanent object. It does. That you would expect to remain there and that drugs are not necessarily a permanent object. It does also say that, but before it says that, it says the affidavit said CI1 had contacted the agent within the last 72 hours. It's a fair reading, though not the only one, that the report and the observation occurred within the last three days. That may have been a fair reading in that case because of the facts of that case and because of what was reported. It is not a fair reading here because you do not have the criminal activity at the exact same location. I wasn't asking about that. You agree, though, that it would be a fair reading that this particular meeting of the CI, the UI, and Tom occurred within the last 72 hours?  There is nothing in the affidavit that allows for such a fair reading. And why is that different than the affidavit in the, I forgot the name of it again. Gaston. Yeah, Gaston. Because in Gaston, the report is that within the last 72 hours, the CI told me that he observed a gun at this location. Right. The report here is within the last 72 hours, I spoke with the CI. The CI told me this story about activity. No, no, no. That's not accurate. I don't think so. I don't think that that's the case. Right. No, he had contacted him within the last 72 hours about observing. He didn't say that he observed it within the last three hours. That's the inference the Court draws. He just contacted him about observing it in the same way here the CI contacts the officer within the previous 72 hours. But, Your Honor, the Court asked me what the distinction was. I understand that. I think that that is a critical distinction. Fair enough. He contacted him about observing. That is all in the present tense, and that is what he has observed inside the location. Here you have I spoke. He does not say he contacted me about observing. He says, the CI contacted your affidavit within the last 72 hours, and then goes on to tell the story of this activity. So the question is, when was this activity? But you have the secondary question of, does this activity establish that the person who got into the car is an ongoing drug dealer, and a single transaction, this Court and no court has found that a single transaction, even if we say that there was an exchange for money for drugs anywhere, that a single transaction with no other indicia that the person is an ongoing drug dealer establishes the time aspect for the search warrant. Okay. Are there further questions? Thank you very much, both sides. We appreciate it. Thank you, Mr. Axson, for allowing your opposing counsel to delay the event until today. Thank you. We're going to take a break while we switch the panel.
judges: Garland, Wilkins, Williams